IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

MAY 02 2018

Clerk, U.S. Courts
District Of Montana
Missoula Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 11-133-BLG-DLC |
| Plaintiff/Respondent, | CV 16-095-BLG-DLC |
| vs. | AMENDED |
| | ORDER GRANTING § 2255 |
| RICHARD LYNDON MEZA, | MOTION AND SETTING |
| | RE-SENTENCING |
| Defendant/Movant. | |

This matter comes before the Court on Defendant/Movant Meza's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Meza is a federal prisoner proceeding with counsel.

## I. Procedural Background

On December 22, 2011, Meza was indicted on three counts of a six-count indictment: one count of conspiring to violate the Hobbs Act, a violation of 18 U.S.C. § 1951 (Count 1); one count of possessing a firearm in furtherance of a crime of violence, viz., the conspiracy alleged in Count 1, a violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); and one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) (Count 6). *See* Indictment (Doc. 19) at 2-3, 6; Plea Agreement (Doc. 52) at 4-6 ¶ 4.

The parties reached a plea agreement. Meza agreed to plead guilty to all

1

three counts, Counts 1, 2, and 6. As relevant here, the plea agreement recited the following elements:

*Conspiracy to Commit Robbery Affecting Commerce – Count I*

First, there was an agreement between two or more persons to commit at least one crime as charged in the indictment; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Third, commerce from one state to another was affected in some way.

*Possession of a Firearm In Furtherance of a Crime of Violence – Count II*

First, the defendant committed the crime of conspiracy to commit robbery affecting commerce, a crime of violence, as charged in Count I of the indictment;

Second, the defendant knowingly possessed a firearm; and

Third, the defendant possessed the firearm in furtherance of the crime of conspiracy to commit robbery affecting commerce.

Plea Agreement at 5-6.

In exchange for Meza's guilty plea to all three counts, the United States agreed to dismiss additional charges pending against Meza in *United States v. Roll*, No. CR 11-132-BLG (D. Mont. filed Dec. 22, 2011). *See* Plea Agreement at 3-4 ¶ 3 para. 2. Meza pled guilty. *See* Minutes (Doc. 62).

On July 12, 2012, Meza was sentenced to serve 43 months on Counts 1 and

6, concurrently, and 60 months on Count 2, consecutive to Counts 1 and 6, for a total term of 103 months in prison. Minutes (Doc. 80); Am. Judgment (Doc. 93) at 2. Meza did not appeal.

Meza now seeks relief under the United States Supreme Court's recent decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## II. Merits

Everyone would agree that a person who plans to use a firearm to commit a robbery is planning to use or at least threaten violence. Meza's plan for committing a robbery included using a firearm. But that does not necessarily mean he possessed a firearm in furtherance of a "crime of violence" within the meaning of 18 U.S.C. § 924(c).

### A. "Crime of Violence"

Congress does not penalize everyone who uses a firearm to commit a crime. It does not even penalize everyone who uses a firearm as a weapon in committing a crime. It penalizes:

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]

18 U.S.C. § 924(c)(1)(A). Congress penalizes those who use a firearm to commit certain kinds of crimes, federal drug trafficking crimes and federal crimes of violence.

3

Drug trafficking is not at issue here. The question is whether Meza possessed a firearm in furtherance of a "crime of violence." Congress defines the term:

> For purposes of this subsection [§ 924(c)] the term "crime of violence" means an offense that is a felony and—
>
> (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

A person who trades a firearm for advice on how to commit tax fraud arguably uses the firearm during and in relation to tax fraud, or at least possesses the firearm in furtherance of tax fraud. *Cf. Watson v. United States*, 552 U.S. 74, 76 (2007); *Smith v. United States*, 508 U.S. 223, 241 (1993). But § 924(c) could not apply to that person, because tax fraud is not a "crime of violence"—that is, it does not have force as an element, and it does not "by its nature" involve a substantial risk that force will be used.

A person who uses a firearm to extort advice on how to commit tax fraud is at least threatening to use violence, and might even use violence, during and in relation to the crime of tax fraud. It would be reasonable to authorize punishment for using a firearm in that manner. Congress once did so. *See* Omnibus Crime

Control Act of 1970, Pub. L. No. 91-644, tit. II, § 13, 84 Stat. 1889, 1890 (Jan. 2, 1971) (authorizing additional one- to ten-year penalty for using a firearm to commit or unlawfully carrying a firearm during commission of "any felony" prosecutable in court of the United States); Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 1837, 2138-39 (Oct. 12, 1984) (replacing former § 924(c) with provision imposing five-year sentence for using or carrying a firearm during and in relation to a crime of violence); *see also* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104(a)(2)(F), 100 Stat. 449 (May 19, 1986) (enacting definition of "crime of violence" currently found in § 924(c)(3)).

But Congress does not do so now. Since 1984, Congress has limited the instances in which a person can be punished for using or carrying a firearm in criminal activity. Section 924(c) could not apply to a person who uses a firearm to extort tax fraud advice, because tax fraud does not meet Congress's definition of a crime of violence.

## B. Categorical Approach

Meza conspired to commit a robbery. Robbery sounds a lot more like a violent crime than tax fraud, but again the question is whether a conspiracy to commit robbery meets Congress's definition of a "crime of violence."

Here, the key characteristic of Congress's definition is that it applies to

categories of crimes, not to the circumstances in which an individual defendant uses or carries or possesses a firearm. Necessarily so: using a firearm as a weapon to commit a crime would make *any* crime a violent one. But if that was what Congress intended, the phrase "crime of violence" would be superfluous.

Congress uses the identical phrase, "crime of violence," elsewhere in Title 18, *see* § 16. It uses a similar phrase, "violent felony," elsewhere in § 924, at subsection 924(e)(2)(B). As to both § 924(e)(2)(B) and § 16, courts use a "categorical approach" to decide whether a given crime fits Congress' definition. This approach looks "only to the statutory definitions" of the crime, "not to the particular facts underlying" an individual defendant's commission of the crime. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also United States v. Sherbondy*, 865 F.2d 996, 1009-10 (9th Cir. 1988) (holding that district court may look only "to the statutes establishing the crimes," not "the individual defendant's specific conduct in committing the . . . offense."), *cited in Taylor*, 495 U.S. at 600.

The Ninth Circuit has long required courts to interpret § 924(c)(3) just as they interpret § 924(e)(2)(B) and § 16, by using the categorical approach. *See United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016); *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993). Congress's language in § 924(c) only penalizes those who possess a firearm in furtherance of *some* crimes. Courts' approach to deciding *which* crimes means that the predicate to a § 924(c)

6

conviction must *always* be a "crime of violence," regardless of how a particular defendant might commit the crime, and regardless of whether a firearm is possessed in furtherance of it. "A crime cannot categorically be a 'crime of violence' if the statute of conviction punishes any conduct not encompassed by the statutory definition of a 'crime of violence.'" *Benally*, 843 F.3d at 352.

### C. The Residual Clause, § 924(c)(3)(B)

Robbery "involves a substantial risk that physical force against the person . . . of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Even if "use" is taken to mean an instrumental, purposeful deployment of force, the residual clause only requires a *substantial risk* that force *may* be used, not that it must be used or attempted or threatened every time.

But this is where the Supreme Court's decision in *Johnson* comes in. *Johnson* concerned a phrase in § 924(e)(2)(B) (the "Armed Career Criminal Act," or "ACCA"), defining a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii). *Johnson* held the italicized portion, commonly called the residual clause, unconstitutionally vague.

Section 16(b) is a similar though not identical clause. It defines a "crime of violence" as a felony "that, *by its nature, involves a substantial risk that physical*

7

*force against the person or property of another may be used in the course of committing the offense.*" On April 17, 2018, the United States Supreme Court affirmed the Ninth Circuit Court of Appeals in holding that the residual clause of § 16(b) is unconstitutionally vague under the rule of *Johnson*. *See Sessions v. Dimaya*, No. 15-1498, slip op. at 24-25 (U.S. Apr. 17, 2018).

Even after *Dimaya*, § 924(c)(3)(B) might not necessarily be unconstitutionally vague. But in the Ninth Circuit, it is. *Mendez* and *Benally* hold that § 924(c)(3)(B) is applied by using categorical analysis, and that method lies at the heart of *Johnson* and *Dimaya*. As the Supreme Court succinctly explained in *Welch v. United States*, ___ U.S. ___, 136 S. Ct. 1257 (2016), *Johnson* held that § 924(e)(2)(B)(ii) "failed not because it adopted a 'serious potential risk' standard but because applying that standard *under the categorical approach* required courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Id.* at 1262 (emphasis added). Acknowledging that some crimes might be "clearly risky," the Court nevertheless held the clause unconstitutionally vague and unenforceable in any case. *See Johnson*, 135 S. Ct. at 2560-61.

Likewise, in *Dimaya*, the Supreme Court said:

> [Section] 16(b) has the same two features that conspired to make ACCA's residual clause unconstitutionally vague. It too requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk. The result is that § 16(b) produces, just as ACCA's residual clause did, more

8

> unpredictability and arbitrariness than the Due Process Clause
> tolerates.

*Dimaya*, No. 15-1498, slip op. at 11 (U.S. Apr. 17, 2018) (internal quotation

marks, brackets, and citations omitted).

This Court is not able to imagine how § 924(c)(3)(B), textually identical to §

16(b) and also applied by using categorical analysis, could be salvaged. At least in

the Ninth Circuit at this time, it is unconstitutionally vague.

### D. *Mendez* and Law of the Circuit Doctrine

Meza asserts, and the United States agrees, that a conspiracy to commit a

Hobbs Act robbery does not have, as an element, the use or attempted or

threatened use of physical force against the person or property of another. *See*

Answer (Doc. 198) at 8-9. Section 924(c)(3)(A) need not be considered. But one

other point must be addressed.

In *Mendez*, 992 F.2d 1488 (9th Cir. 1993), the Ninth Circuit held that

Meza's crime—conspiracy to commit a Hobbs Act robbery—is a "crime of

violence" under 18 U.S.C. § 924(c)(3)(B). *Id.* at 1491. Generally, a published

decision of the Ninth Circuit Court of Appeals is binding authority that "must be

followed unless and until overruled by a body competent to do so." *Hart v.*

*Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). Neither the Ninth Circuit nor the

Supreme Court has overruled *Mendez*.

But a published decision loses its precedential force if subsequent binding

9

precedent has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *Hart*, 266 F.3d at 1170; *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)). In that case, district courts instead "should consider themselves bound by the intervening higher authority and reject the prior opinion . . . as having been effectively overruled." *Gonzalez*, 677 F.3d at 389 n.4.

*Mendez* remains binding precedent to the extent it applies categorical analysis under § 924(c). *See, e.g., Benally*, 843 F.3d at 352. Neither the Ninth Circuit nor the Supreme Court has issued a decision that is "clearly irreconcilable" with that portion of *Mendez*. But *Mendez*'s holding that conspiracy to commit a Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(B), *see* 992 F.2d at 1491, is clearly irreconcilable with *Johnson* and *Dimaya*. The Court is not only *not* bound to follow *Mendez*, it *is* bound *not* to follow *Mendez*. *See Gonzalez*, 677 F.3d at 389 n.4. Section 924(c)(3)(B) is unconstitutionally vague.

### III. Procedural Defenses

Unless the United States is correct that Meza's § 2255 motion is barred on procedural grounds, he is entitled to relief. It asserts that the motion is not timely because 28 U.S.C. § 2255(f)(1) applies and § 2255(f)(3) does not. *See* Answer

(Doc. 198) at 3-5. It also asserts that the motion is procedurally barred because Meza did not appeal his conviction under § 924(c). *Id.* at 5-7.

## A. Statute of Limitations

The statute of limitations, 28 U.S.C. § 2255(f), provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1)    the date on which the judgment of conviction becomes final; [or]

. . .

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

The United States argues that the *Johnson* decision did not mention § 924(c) and, as a result, Meza cannot identify a "right" the Supreme Court has recognized as applicable in his case. *See* Answer at 8-9. In sum, the United States claims the motion is too late under § 2255(f)(1) and, if anything, premature under § 2255(f)(3).

For four reasons, the Court disagrees with this interpretation.

### 1. Narrow Scope of the "Right"

First, the United States suggests *Johnson* announces only "a defendant's right not to have his sentence increased under the residual clause of the ACCA," as the Tenth Circuit recently put it. *See United States v. Greer*, 881 F.3d 1241, 1248

11

(10th Cir. 2018) (holding that *Johnson* did not make timely under § 2255(f)(3) a § 2255 motion seeking relief against sentence imposed under mandatory Guidelines scheme).

But § 2255 does not say anything requiring a federal court to define "the right asserted" so narrowly. It is just as accurate to say that *Johnson* announced a right not to be penalized under a clause that is applied by categorical analysis and "ha[s] both an ordinary-case requirement and an ill-defined risk threshold." *See Dimaya*, No. 15-1498, slip op. at 24. *Dimaya* confirms the latter characterization of the "right" established by *Johnson*. In that case, the Supreme Court said, "*Johnson* is a straightforward decision, with equally straightforward application here," and "tells us how to resolve this case" under § 16(b) of Title 18. *Dimaya*, No. 15-1498, slip op. at 6, 24. If the right recognized in *Johnson* were confined to ACCA, *Dimaya* would not have been decided as it was.

## 2. Delay

Second, the United States suggests Meza must wait to file until the Supreme Court decides a case under § 924(c). But, as Chief Justice Roberts pointed out in his dissent in *Dimaya*, the language of § 16(b) is incorporated or repeated in numerous places in the U.S. Code, "including provisions concerning racketeering, money laundering, domestic violence, using a child to commit a violent crime, and distributing information about the making or use of explosives," as well as §

12

924(c). *See Dimaya*, No. 15-1498, slip op. at 14-15 (Roberts, Ch. J., dissenting). The United States' argument would seem to require the Supreme Court to decide whether the "right" in *Johnson* applies to each statute *before* a federal defendant could file a § 2255 motion.

Congress intended the statute of limitations "to eliminate delays in the federal habeas review process," *Holland v. Florida*, 560 U.S. 631, 648 (2010), not to create them. Requiring people who "assert" that *Johnson* gives them a right to relief to file within a year of *Johnson*'s issuance serves Congress's purpose much better. Anyone who asserts that a later case applying *Johnson* confers a right to relief—say, *Dimaya*, or a case specifically addressing § 924(c)—is unlikely to receive the benefit of § 2255(f)(3), because the Court "initially recognized" the "right asserted" in *Johnson*, not in *Dimaya* or a later case.

### 3. Redundancy

Third, the United States' argument needlessly entangles the question of when to file with the decision as to whether the movant actually has the right he asserts. And to what end? If the filing is timely, it is meritorious. If it lacks merit, it is untimely. This leaves the limitations period with no work to do. Statutes of limitation are not generally redundant with the merits of a claim in this way.[1]

---

[1] On the other hand, a motion that lacks merit might still be timely if equitable tolling applies or, in the case of a state prisoner, if statutory tolling applies. *See* 28 U.S.C. § 2244(d)(1)(C), (d)(2). So the "new right" limitations period would be worse than redundant.

13

The other provisions of the limitations period, § 2255(f)(1), (2), and (4), are independent of the merits of the claim presented. By simply reading § 2255(f)(3) to require a defendant asserting a new right to relief to file within a year of the Supreme Court's initial decision recognizing the right, § 2255(f)(3) is as easy to apply and as independent of the merits as the other subsections of the limitations period.

### 4. Section 2255(f) vs. Section 2254(d)

Finally, the United States' interpretation seeks to turn a timeliness provision into a restriction on federal courts' responsibility to say what the law is in federal criminal cases on collateral review. Some courts have found that § 2255(f)(3) imports *Teague v. Lane*, 489 U.S. 288 (1989)—which had nothing to do with a statute of limitations—into one subsection of the statute of limitations that now applies to federal prisoners filing § 2255 motions. *See, e.g.*, *Greer*, 881 F.3d at 1246-47.

Section 2255 imposes several restrictions, but it does not go as far as some courts have held. Section 2255(f)(3) *does* limit federal prisoners to asserting new rights that are recognized by the Supreme Court, as opposed to new rights recognized by federal appellate courts or conferred by federal statutes or rules. A provision restricting second or successive motions, § 2255(h)(2), *does* limit federal courts' authority to hear successive motions that are based on new constitutional

rules, but it simply requires the Supreme Court to recognize the rule and also say it is retroactive. Section 2255(h) does not say anything that restricts the scope or application of a new constitutional rule.

If Congress wanted to restrict federal courts' authority to award collateral relief to federal prisoners, it knew how to do it. It *did* curtail federal courts' authority to award federal habeas relief to *state* prisoners. 28 U.S.C. § 2254(d)(1) provides that an application for federal habeas relief "shall not be granted unless" the state courts' decision of the claim was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."

To do the same thing in § 2255, where rights newly recognized by the Supreme Court are concerned, Congress would have said something very simple, for instance, "A motion based on a newly recognized right shall not be granted unless the movant's right to relief is clearly established by the Supreme Court of the United States." As Congress did not say that, § 2255 does not limit collateral relief for federal prisoners to cases where relief is dictated by precedents of the Supreme Court.

### 5. Conclusion

Meza asserts that the Supreme Court's decision in *Johnson* gives him a right to relief. He filed within one year of the date of the decision. His § 2255 motion is

timely under § 2255(f)(3).

## B. Procedural Default

The United States also asserts that Meza's claim is procedurally defaulted because he did not challenge his conviction under 18 U.S.C. § 924(c) on direct appeal. *See* Answer at 5-7. It is correct that a default exists. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

### 1. Excusing the Default

The merits of a defaulted claim cannot be heard unless the defendant's default is excused. Default may be excused if a defendant shows both cause for the default and prejudice resulting from the constitutional violation he asserts. Alternatively, procedural default is excused by actual innocence. *See, e.g., Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley*, 523 U.S. at 622, 624; *Murray v. Carrier*, 477 U.S. 478, 496-97 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Meza meets the "cause" prong of the cause-and-prejudice test. An "objective factor external to the defense,'" *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), prevented him from challenging the validity of his conviction under 18 U.S.C. § 924(c): the novelty of the Supreme Court's decision in *Johnson*. *See Ross v. Reed*, 468 U.S. 1, 17 (1984); *see also* Order (Doc. 72) at 7-13, *United States v. Mann*, No. CR 09-75-

GF-BMM (D. Mont. May 9, 2017).

In addition, Meza is actually innocent. Even assuming a defendant "cannot be actually innocent of a non-capital sentence," Answer at 7, § 924(c) is not merely a sentence enhancement but—as the United States says elsewhere—"a *new* offense," *id.* at 15. A defendant who uses or carries a firearm during and in relation to a crime that is neither a "crime of violence" nor a "drug trafficking crime" has not, in fact, violated § 924(c).

## 2. Prejudice

Both the actual innocence test and the cause-and-prejudice test impose a further requirement. "[W]here the Government has forgone more serious charges in the course of plea bargaining," it "should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered" in view of the plea agreement. *Bousley*, 523 U.S. at 624. And "petitioner's showing of actual innocence must also extend to those charges." *Id.* Likewise, excusing procedural default under the cause and prejudice test requires a demonstration of prejudice.

In Meza's case, the United States did forego other charges. It dismissed all charges in another case, *United States v. Roll*, No. CR 11-132-BLG (D. Mont. filed Dec. 22, 2011), as to all four defendants named in it, in favor of state prosecution, *see* Mot. to Dismiss (Doc. 61) at 2; Order of Dismissal (11-132 Doc. 62) at 1.

17

Nonetheless, *Bousley*'s requirement is met here. The point is that a defendant must show he was prejudiced by the constitutional violation he asserts. A defendant who pleads guilty to a lesser crime that is later held constitutionally infirm receives a windfall if vacation of his conviction means permanently eludes punishment for a greater crime. Here, Meza was charged with substantially similar crimes in the other case, and he was prosecuted, convicted, and sentenced in state court. *See* CON Network, https://app.mt.gov/conweb (accessed Apr. 23, 2018). He also pled guilty to all counts against him in this case.

Meza was convicted of possessing a firearm in furtherance of a crime of violence when the crime he committed was not a "crime of violence." The five-year prison term imposed for that conviction is prejudicial to him. Meza's procedural default is excused.

## IV. Conclusion

Section 924(c)(3)(B) is unconstitutionally vague because it uses the same language and is interpreted by the same method as the provisions at issue in *Johnson* and *Dimaya*. Meza did not commit a "crime of violence" and his conviction on Count 2 is invalid. Further, his motion was timely filed and is not procedurally barred.

Meza's conviction on Count 2 will be vacated and he will be re-sentenced on Counts 1 and 6. *See Dean v. United States*, __ U.S. __, 137 S. Ct. 1170, 1176

18

(2017); *Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008); *United States v. Handa*, 122 F.3d 690, 691-92 (9th Cir. 1997). The new sentence will be determined by applying 18 U.S.C. § 3553(a) and, except as limited by *Peugh v. United States*, 569 U.S. 530 (2013), the 2016 Sentencing Guidelines Manual.

A certificate of appealability need not be considered because this decision is not adverse to Meza. *See* Rule 11(a), Rules Governing § 2255 Proceedings.

Accordingly, IT IS HEREBY ORDERED:

1. Meza's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 189) is GRANTED.

2. The conviction on Count 2 is VACATED.

3. Sentencing is set for **Wednesday, August 8, 2018,** at **10:30 a.m.** in the Russell Smith Courthouse, Missoula, Montana.

4. The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting conviction and sentence on Count 2. Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5. The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **June 25, 2018.** The probation officer shall not disclose any recommendation made or to be made to the Court.

6. If restitution is mandatory, the probation officer shall discuss a payment

19

plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

7.  Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **July 9, 2018.** U.S.S.G. § 6A1.2. **Any unresolved objections are expected to be included in the presentence report, not in a sentencing memorandum.**

8.  The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **July 18, 2018.**

9.  Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **July 25, 2018.** Absent good cause shown, sentencing memoranda and supporting documents filed after that date will not be considered in addressing sentencing issues. Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10. Responses to sentencing memoranda shall be filed on or before **August 1, 2018.**

11. Reply briefs will not be accepted for filing in sentencing matters.

12. The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13. All parties that intend to have witnesses testify at sentencing shall give notice to this Court ten days prior to the sentencing date.

14. The United States Marshals Service must transport Richard Lyndon Meza, BOP # 11526-046, to the District of Montana. Meza must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15. When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of Meza and against the United States.

DATED this 2nd day of May, 2018.

Dana L. Christensen, Chief Judge
United States District Court

cc:   USPO
      USMS